**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHELLY MYERS, o/b/o, )<br>L.M., a minor, o/b/o )<br>ROBERT EUGENE VAN ORDER, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | Case No. 11 C 2845<br><br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM OPINION AND ORDER**

Shelly Myers seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying Robert Van Order's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423(d)(2). Ms. Myers asks the court to reverse the Commissioner's decision and award benefits, or remand the decision for further proceedings. The Commissioner seeks an order affirming the decision.

**I.
THE PROCEDURAL HISTORY**

Mr. Van Order applied for disability insurance and supplemental security benefits in March 2007, alleging he became disabled April 30, 2006. (Administrative Record ("R.") 119-31). The Commissioner denied his initial application on October 15, 2007. (R. 71). His Request for Reconsideration was filed on October 27, 2007 and was denied on January 4, 2008. (R. 80-81). Van Order requested a hearing before an Administrative Law Judge (ALJ) on January 23, 2008. (R. 56). A hearing was held on July 22, 2009. (R. 15). ALJ Paul R. Armstrong found Mr. Van Order to not

be disabled and denied the claim on July 23, 2009. (R. 65). Mr. Van Order filed for a review of the hearing decision on September 14, 2009. (R. 117-18). The Appeals Council denied the request for review on March 7, 2011 making this the final decision of the Commissioner. (R. 1). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Van Order appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Mr. Van Order died on January 20, 2012. (Doc. 16: Motion for Substitution). On February 24, 2012, Mr. Van Order's minor child, L.M., moved to be substituted as Plaintiff in the case. *Id.* The court granted L.M.'s motion. (Doc. 18: Order Granting Motion for Substitution.) The Commissioner moved to dismiss L.M.'s complaint for lack of subject-matter jurisdiction. (Doc. 19: Motion to Dismiss). On April 10, 2012, the court granted the Commissioner's motion to dismiss L.M.'s claim concerning the denial of her father's application for supplemental security income. (Doc. 26: Agreed Order). The court denied the Commissioner's motion to dismiss L.M.'s claim concerning her father's application for disability insurance benefits. *Id.* L.M.'s mother, Shelly Meyers, was substituted as Plaintiff in the case. *Id.*

## II.
## THE EVIDENCE OF RECORD

### A.
### The Vocational Evidence

Mr. Van Order was born on February 28, 1962, making him forty-seven years old at the time of the ALJ's decision. (R. 282). He had a 9th grade high school education and did not have a GED. (R. 31, 209). He did not have any special job training or trade schooling. (R. 209). His computer skills were limited, but he could operate a computer "very slowly." (R. 31).

Mr. Van Order had 19 different employers from 1994 to 2006. (R. 147-51). After his claimed disability onset date of April 30, 2006, he was employed in retail sales at a pet store where he lifted 40 to 50 pound boxes, and was also employed as a driver for delivery on a paper route, but was fired after getting a DUI. (R. 21, 34, 62, 129). Prior to that, other recent job duties included cleaning, general labor, landscaping, and machine operation tasks involving bending, twisting, and regular lifting of 25 to 50 pounds. (R. 35, 191-95).

**B.**
**The Medical Evidence**

Mr. Van Order suffered from lower back pain, alcoholism, depression, panic attacks, and anxiety. (R. 58, 89). He allegedly became disabled as of April 30, 2006 due to a work injury sustained while moving a machine. (R. 277). After the alleged disability onset date, he left his house daily to visit family, run errands, and make appointments, usually driving a car to do so. (R. 235). He had problems with focus and concentration since childhood and self-diagnosed with "some sort of attention deficit problem." (R. 25-26, 234). He regularly took prescribed Soma, Vicodin, and Xanax to treat his ailments. (R. 208).

On April 26, 2006, Mr. Van Order went to the emergency room at Morris Hospital complaining of fever, nonproductive cough, and generalized weakness. (R. 286). He denied any consumption of alcohol and stated that he had smoked tobacco at 1 pack per day for 25 years. (R. 287). Dr. Kevin Webster ordered x-rays, which revealed bilateral interstitial process and possible mild bilateral hilar lymph node enlargement. (R. 293). Mr. Van Order was discharged that day and prescribed an Albuterol inhaler, Zithromax, Phenergan/COD, and Orasone. (R. 290).

The first medical evidence of record in which Mr. Van Order complains of back pain occurred at another emergency room visit to Morris Hospital on July 11, 2006. (R. 299). He was

3

moving a scrubbing machine at work when he pulled his back, causing pain that was worse with movement, with intermittent numbness to his left leg. *Id.* He described the pain as burning, sharp, and cramping, rating the pain as 8 on a scale of 0-10. (R. 299, 303). He experienced pain with straight leg raises. (R. 300). Mr. Van Order again denied consumption of alcohol and alcohol abuse. (R. 299). He requested Vicodin from the treating physician, again Dr. Webster, but was denied as the doctor did not think it necessary, prescribing Norflex instead. (R. 300). He was discharged the same day, able to drive himself and walk without assistance. (R. 303).

On July 28, 2006 Mr. Van Order went to Adventist Hinsdale Hospital for another back injury after lifting a 75-gallon fish tank at work. (R. 355). He complained of "shooting pain" to both legs, rating pain at 7 on a scale of 0-10. *Id.* Mr. Van Order was discharged after Dr. Karen Russell diagnosed acute back strain and prescribed ibuprofen. (R. 356, 358).

On November 21, 2006, Mr. Van Order went to Silver Cross Hospital, complaining of lower back pain since working on a car the day prior. (R. 318). The pain was alleviated by resting or remaining still, and aggravated by any movement, bending, or twisting. *Id.* He again denied using alcohol. *Id.* No pain was experienced during straight leg raises. *Id.* He was discharged that day and prescribed Vicodin and Soma. (R. 319). On January 10, 2007 he presented to St. Joseph Medical Center for lower back pain, starting after he had lifted a 100-pound aquarium at work. (R. 341). He was prescribed Ultram, Skelaxin, Naprosyn, and instructed to ice his back. (R. 345).

Mr. Van Order went to Riverside Medical Center for back strain on January 19, 2007, again incurred after working on a car. (R. 366). He rated pain as 8 on a 0-10 scale and described it as sharp and constant. (R. 368). On February 20, 2007 he went to Riverside Medical Center for lower back injury and pain described as tearing, again incurred during heavy lifting. (R. 380-81). No pain was

4

reported during straight leg raises, and he was given Norflex, Vicodin, and Toradol. (R. 382).

From June 30, 2005 to April 22, 2007 Mr. Van Order saw Dr. Aftab Khan more than 15 times, routinely complaining of panic attacks and lower back pain. (R. 390-412). His range of motion was typically limited to 80%, and he experienced pain while moving his back. *Id.* In an April 2007 Activities of Daily Living Questionnaire, he described difficulty related to pain in dressing himself, personal hygiene upkeep, carrying bags of groceries or baskets of laundry, and taking out the trash. (R. 183). He claimed he had to get up every half hour to move around, and that he also "can't do anything" for more than 5-10 minutes without needing to sit. (R. 184). He also wrote that he could use a treadmill for 20 minutes and that he was incapable of doing any yard work, household repairs, or car washing. (R. 185).

An MRI of the lower back on May 21, 2007, revealed broad disc bulging at L5-S1 diffusely, including both foraminal regions with some associated enlargement of the nerve root on the left side. (R. 415). There was minimal posterior disc bulging with slight flattening at the anterior thecal sac at L4-5 of questionable significance. *Id.* Other lumbar levels were within normal limits and no spinal stenosis was identified. *Id.*

Dr. Khan referred Mr. Van Order to George DePhillips, M.D., S.C. for a neurosurgical consultation. (R. 418). On June 13, 2007, Mr. Van Order presented to Dr. DePhillips with chronic thoracic and lower back pain, with the lower back pain more constant than the mid back pain. (R. 417). The lower back pain radiated into the hips and buttocks and also into the posterior thighs to the knees. *Id.* Mr. Van Order reported pain of 5 on good days and 9 on bad days, on a scale of 1-10. *Id.* Dr. DePhillips states that the MRI scan revealed degenerative disc disease at the L5-S1 level and that this was causing Mr. Van Order to have mechanical back pain. *Id.* Dr. DePhillips opined that

based on his condition, Mr. Van Order was disabled and incapable of meaningful employment. *Id.* The doctor went on to state that Mr. Van Order was a candidate for spinal fusion surgery at the L5-S1 level if conservative treatment failed. *Id.*

On July 5, 2007, state agency physician Richard Bilinsky, M.D. completed a Residual Functional Capacity ("RFC") assessment of Mr. Van Order. (R. 427, 434). Based on his review of the evidence, Dr. Bilinsky asserted Mr. Van Order was capable of lifting, carrying, pushing, or pulling up to 20 pounds occasionally; lifting, carrying, pushing, or pulling up to 10 pounds frequently; and sitting, standing, or walking for about six hours in a normal eight-hour workday (Tr. 427–34). On October 10, 2007 state agency reviewing psychologist Russell Taylor, Ph.D, determined that Mr. Van Order suffered from anxiety-related disorder and serious, ongoing alcohol dependence. (R. 439-47). Dr. Taylor also asserted that Mr. Van Order had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (R. 449). He further opined that even with alcohol issues, Mr. Van Order retained the ability to understand, remember, and carry out simple tasks. (R. 455).

Dr. Khan saw Mr. Van Order for lower back pain an additional 5 times between July 23, 2007 and November 6, 2007. (R. 458-62). Mr. Van Order was examined in September 2007 by consultative psychologist William Hilger, Ph.D. (R. 524). Dr. Hilger concluded that he had "fair mental potential if he would stop drinking to perform work related activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation." (R. 529). Dr. Hilger further stated that Mr. Van Order was "certainly capable of un- to semiskilled types of work duties if he was so inclined" and that he "may have to pursue lighter, sedentary, and clerical

6

types of duties in view of the alleged back condition."*Id.* The doctor noted that Mr. Van Order's alleged back pain appeared to be "fairly well-controlled with medication." *Id.* He issued a global assessment of functioning ("GAF") score of at least 65 to 70.[1] *Id.* Mr. Van Order admitted to Dr. Hilger in September 2007 that he was still drinking "as much as possible on a binge basis" and went on a binge two weeks before the evaluation. (R. 528). Mr. Van Order also admitted that he lost his paper delivery route job due to becoming drunk and missing days from work. *Id.* Lastly, a follow-up MRI of the thoracic spine on February 14, 2009 revealed mild disc bulges at T8-9 and T9-10, but no evidence of any significant spinal stenosis. (R. 519). There was no significant change since the prior MRI in 2007. (R. 517).

## C.
## The Administrative Hearing Testimony

### 1.
### The Claimant's Testimony

At his July 22, 2009 hearing, Mr. Van Order testified that he had a drinking problem in the past and that he then had no desire to drink. (R. 20). He also claimed he went "through a lot of depression on a regular basis," and began suffering from it when he was 14 or 15 years old. (R. 25-26). He stated the last time he had worked was in 2007 on a paper delivery route, but he was fired after getting a DUI. (R. 21). Mr. Van Order claimed that the back pain he was experiencing at the time led him to drink. (R. 27). He stated that his license was suspended as a result of the DUI, but even once reinstated, he would have been unable to do that delivery job due to back pain that had since gotten worse. (R. 22). In describing other previous work, he described a janitorial job as "fairly

---

[1] A GAF score of 68 to 70 indicates some minimal symptoms or some difficulty in social or occupational functioning. But generally, the individual is functioning pretty well. www.gafscore.com.

7

physical," involving a lot of bending, twisting, and cleaning of bathrooms, toilets, and floors. (R. 34).

Mr. Van Order testified that he could walk only limited distances, about two or three blocks, before experiencing pain in his back. (R. 23). He said that it felt "like there's no cushion at all down there" and he could feel every step. *Id.* He said the pain sometimes went down to his legs, and sometimes made his left leg numb. *Id.* When asked by the ALJ why he never pursued a GED, Mr. Van Order responded that he did not know how to do it without any money. (R. 24). He explained that he suffered from regular panic attacks and the Valium he would take to treat the attacks rendered him unable to drive a car or do any kind of work with machinery. (R. 33). He further testified that he had frequent crying spells, occurring every couple of days. *Id.*

Mr. Van Order stated he was limited in household activities such as cleaning or working in the house and garden in that the more he does on his feet, the more pain he suffers and has to stop. (R. 26). He stated that after doing "anything physical whatsoever" for about five to ten minutes pain would start to come on and he would have to go into the house to lie down. (R. 27). Mr. Van Order asserted that he would be unable to do a simple desk job because he was unable to sit down in one place for much longer than he could stand. (R. 28). He claimed that he would be unable to do a job even if it were limited to phone calls and he was allowed to sit or stand at his discretion because he would have to lay down two or three times throughout the day. (R. 29). Mr. Van Order felt that on most days he would have to lie down to cope with pain at intervals frequent enough that it would interfere with work. (R. 30). He stated that since he saw Dr. DePhillips in 2007, where he was in pain "maybe 50 percent of the time," while at the time of the hearing he was in pain 90 to 100 percent of the time. (R. 37, 417).

## 2.
## The Girlfriend's Testimony

Mr. Van Order's girlfriend, Kim Mattas, was also present at the July 2009 hearing before the ALJ. (R. 44). Mattas testified that she was "an HR personnel person that deals with a lot of hiring." (R. 45). She stated that her company drug screens every person hired and if he or she is found to be on opiates, such as Vicodin, they are "absolutely not allowed employment." *Id.* She indicated that her company had a zero tolerance policy for opiates and similar drugs in production jobs and duties involving operating equipment, but also that there were jobs aside from those types where valid prescription drug use would be tolerated so long as the employer was informed. (R. 45-46).

## 3.
## The Vocational Expert's Testimony

Grace Janforetes testified as a vocational expert ("VE") at the hearing. (R. 39). She discussed Mr. Van Order's previous work, categorizing it by a physical exertion level of sedentary, light, medium, heavy, or very heavy based on the amount of pounds of force occasionally exerted. (R. 40). *See* 20 CFR § 404.1567. She also rated the work by its Specific Vocational Preparation ("SVP"), or the typical amount of time required by a worker to learn the technique and skill requisite to perform a certain job. *See* 1991 WL 688702. She categorized his past janitor work as medium exertion with an SVP of two, his past pet store job as medium with an SVP of three, the landscaping work as medium with an SVP of two, and the paper delivery route as medium with an SVP of three. (R. 40). She testified that a hypothetical individual limited to simple, unskilled, light work would not be able to return to those jobs because none of the past work was at a light exertion level. (R. 40-41). The VE stated that in Illinois there existed about 5,000 counter attendant jobs and about

8,000 cafeteria attendant jobs that the hypothetical individual could perform, both of light exertion and an SVP of two. (R. 41).

The ALJ then asked the VE what kind of jobs the hypothetical individual could perform if he had to lie down at irregular intervals at least once a day for an hour during the workday. (R. 40). She responded that such a condition would be an adverse factor to sustaining competitive work. (R. 42). The ALJ then asked the VE to assume that the hypothetical individual would not have to lie down during the day but would miss more than two days of work a month for pain reasons. *Id.* He then asked the VE to assume separately, due to pain or side effects from medication, that the individual would be unable to stay on task in the referenced, simple, unskilled jobs for an average of 15 minutes out of every hour. *Id.* The VE stated that both of these scenarios again presented conditions adverse in sustaining competitive work. *Id.*

## D.
## The ALJ's Decision

The ALJ found that Mr. Van Order suffered from the following severe impairments: "degenerative disc disease ("DDD"), alcoholism, depression and anxiety." (R. 58). The ALJ determined that Mr. Van Order did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 59). He specifically determined that Mr. Van Order's physical impairments did not meet or medically equal the criteria of a musculoskeletal listing 1.04, which covers disorders of the spine. *Id.* The ALJ also concluded that Mr. Van Order's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06, covering affective and anxiety disorders. *Id.*

Next, the ALJ determined that Mr. Van Order had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) but is limited to simple, unskilled work only." (R. 60). The ALJ found that Mr. Van Order's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible because they were inconsistent with the residual functional capacity assessment. (R. 61).

The ALJ recounted Mr. Van Order's alleged chronic back pain preventing him from engaging in any activity for more than five to ten minutes, his inability to carry or lift more than 10 pounds, and pain getting progressively worse the longer time spent sitting or standing. (R. 60-61).

He then pointed out that in light of the alleged impairments, Mr. Van Order still maintained a "full slate of daily activities and interests, including leaving home on a daily basis, visiting family, doing errands, performing household tasks, going to church, talking on the phone, driving, fixing things, and going out to eat." (R. 61). The ALJ also noted that the allegedly disabling impairments during Mr. Van Order's work at the pet store and on the paper route had persisted throughout at about the same level of severity, "strongly suggestive" that his alleged disabilities would not currently prevent work. (R. 63). The ALJ further opined that the medical evidence demonstrated that conservative treatment with prescription medication had been successful in controlling symptoms. *Id.*

In formulating his assessment regarding the extent to which Mr. Van Order's symptoms limit his ability to do basic work activities, the ALJ first considered the medical treatment record. (R. 60-61). The ALJ noted that Mr. Van Order's symptoms were "precipitated by his repeated attempts to do heavy exertional work," given his numerous emergency room visits for back strains in 2006 and

11

2007. (R. 61). The ALJ then discussed the May 2007 MRI that Dr. Khan ordered, and Mr. Van Order's neurosurgical consultation with Dr. DePhillips the following month. *Id.* Dr. DePhillips concluded that Mr. Van Order was disabled and not capable of meaningful employment. *Id.* Acting under authority providing that ultimate disability determinations are reserved to the Commissioner of the Social Security Administration, the ALJ found Dr. DePhillips' conclusion not credible to the extent it was inconsistent with the ALJ's RFC and the other medical evidence of record. *Id.*

The ALJ then compared the RFC with the results of clinical psychologist William Hilger's consultative examination. (R. 62). He stated that he gave "significant weight to the observations and opinions of Dr. Hilger, as he…issued findings consistent with the rest of the medical evidence record." *Id.* The ALJ noted that Mr. Van Order's September 2007 disclosure to Dr. Hilger that he was "still drinking as much as possible" contradicted his testimony before the ALJ that he had stopped drinking upon being arrested for DUI six weeks before that evaluation, and also contradicted his attorney's representation that he had stopped drinking in early 2007. (R. 62, 520). The ALJ stated that, despite the history of alcoholism, he found Mr. Van Order "to be credible in his assertion that he has not been drinking for the last year and a half, since shortly after his DUI and examination by Dr. Hilger." (R. 63). The history of alcohol abuse was not material to the ultimate disability determination because the allegedly disabling physical and mental impairments persisted during Mr. Van Order's post-DUI sobriety. *Id.*

In sum, the ALJ based his RFC finding on Mr. Van Order's effective and conservative medical treatment, Dr. Hilger's observations, the stable condition of his DDD as shown by MRI results, his relatively unrestricted activities of daily living, and his history of working despite his impairments. (R. 64). The ALJ opined that Mr. Van Order was capable of returning to simple,

unskilled work not requiring sustained concentration or the ability to follow complex instructions. (R. 64). Given the testimony of the vocational expert, the claimant's age, work experience, and RFC, the ALJ concluded that Mr. Van Order was capable of adjusting to other work that existed in significant numbers in the national economy, and accordingly found him "not disabled." (R. 65).

## III.
## DISCUSSION

### A.
### The Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.' " *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013); *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir.2009); *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir.2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Binion on Behalf of Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). In order for the court to affirm a denial of benefits, the ALJ must "minimally articulate" the reasons for his

decision. *Berger,* 516 F.3d at 544; *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This means that the ALJ "must build an accurate and logical bridge from [the] evidence to [the] conclusion." *Dixon,* 270 F.3d at 1176; *Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 486 (7th Cir. 2007). This does not mean that the ALJ must provide a complete written evaluation of testimony and evidence. *Pepper*, 712 F.3d at 761-62. He cannot, however, limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). The ALJ's decision must also allow the court to assess the validity of his findings and afford the plaintiff a meaningful judicial review. *Scott*, 297 F.3d at 595. In other words, as with any well-reasoned decision, the ALJ must rest a denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade. *Berger,* 516 F.3d at 544; *Eichstadt v. Astrue,* 534 F.3d 663, 665–66 (7th Cir. 2008).

**B.**
**The Five-Step Sequential Analysis**

Section 423(d)(1) defines "disability" as an: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Heckler v. Day,* 467 U.S. 104, 107 n. 1 (1984); *Skinner v. Astrue,* 478 F.3d 836, 844 (7th Cir. 2007). The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed

as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy.

20 C.F.R. §§ 404.1520; *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351–52 (7th Cir. 2005); *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the plaintiff is disabled. 20 C.F.R. § 416.920; *Briscoe,* 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1989). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520; *Stein,* 892 F.2d at 44. The plaintiff bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe,* 425 F.3d at 352.

## C.
## Analysis

Ms. Myers offers a couple of reasons why this case must be remanded to the Commissioner for further proceedings. The most compelling among them – and one that Ms. Meyers actually raises twice (7-8, 10) – has to do with the Seventh Circuit's thinking on how ALJ's may account for certain psychological limitations in their RFC findings.[2] In this case, the ALJ determined, at step

---

[2] Much of the balance of Ms. Myer's brief is unconvincing. For example, she faults the ALJ for playing doctor with Mr. Van Order's MRI results (*Memorandum in Support*, at 7, 9), but the ALJ relied on doctors' impression of the MRI evidence in his opinion. (R. 61, 63). Ms. Myers also seems to think that the ALJ was bound to accept Mr. Van Order's allegations as to his limitations, like having to lie down during the day. (*Memorandum in Support*, at 7, 9-10). But the ALJ gave good reasons for not crediting such testimony, including Mr. Van Order's inconsistent statements, his broad range of daily activities, continuing to work after claiming he was disabled, and the objective medical evidence. (R. 62-63); *Schreiber v. Colvin*, 2013 WL 1224905 (7th Cir. 2013); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Orienti v. Astrue*, 2013 WL 4008719, *12 (N.D.Ill. 2013). Finally, Ms. Myers also submits that the ALJ failed to consider the side effects from Mr. Van Order's medications. But those side effects caused him limitations in concentration, persistence, and pace, which the ALJ did find Mr. Van Order had. The problem, as we shall see, is where the ALJ went from there.

three, that Mr. Van Order had moderate difficulties with concentration, persistence, and pace. He went on to include these specific limitations in the section devoted to his RFC finding, stating that Mr. Van Order was "capable of returning to simple, unskilled work not requiring sustained concentration or the ability to follow complex instructions." (R. 64). From there, the ALJ found that Mr. Van Order was limited to simple, unskilled work, dropping anything specific regarding concentration, persistence, or pace. That is how he posed his hypothetical to the VE as well.

The Seventh Circuit has stated that generally, the ALJ is required to orient the VE to the totality of a claimant's limitations, including deficiencies of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009); *Kasarsky v. Barnhart,* 335 F.3d 539, 544 (7th Cir.2003); *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir.2002). The most effective way to do so, the court has explained, is to include limitations like a moderate limitation in concentration, persistence, or pace in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619. As the Commissioner concedes, the ALJ did not include this limitation in his hypothetical here. While there are exceptions to this general requirement, *see O'Connor-Spinner*, the Commissioner does not suggest that they are applicable here. (*Defendant's Response*, at 11-12).

What the Commissioner does argue is novel. She contends that the ALJ's finding at step three is somehow divorced from his RFC determination. In other words, when the ALJ found that Mr. Van Order had a moderate limitation in concentration, persistence, or pace at step three, this was only to determine whether he met the listings. Thereafter, in crafting his RFC, the ALJ was free to account for this specific deficiency by limiting Mr. Van Order to simple, unskilled work – and, in turn, free to do so in his hypothetical as well. The Commissioner points out that in *O'Connor-*

16

*Spinner*, the ALJ had specifically included the claimant's moderate limitation in his RFC and the ALJ here did not do that.

But it's difficult to see why that matters. In *Stewart*, a precursor to *O'Connor-Spinner*, the Seventh Circuit was a bit more explicit about its problems with ALJs translating moderate limitations in concentration into a capacity for simple work. It is not a question of the hypothetical matching the RFC, it's a question of it matching the evidence. And so, in *Stewart*, the court held that "[w]hen an ALJ poses a hypothetical question to a vocational expert, the question *must include all limitations supported by medical evidence in the record*. 561 F.3d at 684 (emphasis supplied). This, the court said, meant that the ALJ must account for documented limitations of concentration, persistence, or pace. 561 F.3d at 684. Such a limitation was clearly documented here – the ALJ specifically found it was. (R. 59, 64). But he failed to mention it in his hypothetical to the VE, and the VE's answer to this faulty hypothetical provided the basis of the ALJ's conclusion that there were jobs that Mr. Van Order could perform.

The Commissioner hopes to divorce the ALJ's step three finding from his RFC finding, submitting that SSR 96-8p instructs ALJs to:

> remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1996 WL 374184, *4. The SSR does not run counter to cases *O'Connor-Spinner* or *Stewart*, or allow ALJs to whittle specific limitations like a moderate difficulty in concentration into a more general capacity for simple, unskilled work. In fact, the SSR suggests that the ALJ's finding must

17

become more detailed.

In sum, there is nothing in the applicable case law to suggest, as the Commissioner is urging, that an ALJ can translate a moderate limitation in concentration into a simple work RFC – just not into a simple work hypothetical. The fact is, that here, the ALJ found that credible, medical evidence established that Mr. Van Order suffered from just the type of limitations the Seventh Circuit has said, time and again, must be specifically accounted for in a hypothetical to a VE. Because the ALJ failed to do that here, this case must be remanded.

Still, the Commissioner cannot be faulted for fashioning such an argument given the line of cases from the Seventh Circuit on this issue. If not Byzantine, they are at least intricate, with various subtly different fact pattens leading to different results. *See Walters v. Astrue*, 444 Fed.Appx. 913, 918 (7th Cir. 2011); *O'Connor-Spinner*, 627 F.3d at 619-20. The Seventh Circuit itself has allowed that there is "uncertainty in the law" regarding this subject. *Kusilek v. Barnhart*, 175 Fed.Appx. 68, 71 (7th Cir. 2006).[3] But here, to uphold a decision where the ALJ specifically concluded the claimant was moderately restricted in concentration, persistence, or pace, yet did not mention this in his hypothetical would be to invite reversal by the Seventh Circuit.

## CONCLUSION

The plaintiff's motion for summary judgment or remand [#27] is GRANTED, and the Commissioner's motion for summary judgment is DENIED.

---

[3] Two Indiana district courts seemingly have bought into the Commissioner's reasoning, *see Herrold v. Astrue*, 2012 WL 967354, *26 (N.D.Ind. 2012); *Allbritten v. Astrue*, 2012 WL 243566, *7 (N.D.Ind. 2012). To the extent that these cases do allow for what the ALJ did here, we decline to follow them and choose instead to address what appear to be the Seventh Circuit's concerns about the translation of moderate limitations in concentration, persistence, or pace into simple, unskilled work.

ENTERED: /s/ Jeff Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/26/13

1.